**CASE NO. 22-4562(L), 22-4734** PUBLIC

### IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

TERRELL DARNELL WALTON,

*Defendant - Appellant.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

───────────────

## OPENING BRIEF OF APPELLANTS - PUBLIC (Redacted)

───────────────

Allen H. Orenberg
ORENBERG LAW FIRM, PC
12505 Park Potomac Avenue
6th Floor
Potomac, MD 20854
301-984-8005
aorenberg@orenberglaw.com

*Counsel for Appellant*
 *Terrell D. Walton (22-4652)*

Gary E. Proctor
LAW OFFICES OF
GARY E. PROCTOR, LLC
8 East Mulberry Street
Baltimore, MD 21202
410-444-1500
garyeproctor@gmail.com

*Counsel for Appellant*
 *Che J. Durbin (22-4734)*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES .............................................................. iii

GLOSSARY OF ABBREVIATIONS ................................................v

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICITION .......1

STATEMENT OF THE CASE............................................................1

STATEMENT OF THE ISSUES.......................................................2

STATEMENT OF THE FACTS .........................................................2

SUMMARY OF THE ARGUMENT .................................................11

ARGUMENT .................................................................................13

I.   THE DISTRICT COURT IMPOSED A SUBSTANTIVELY
     UNREASONABLE SENTENCE AS TO TERRELL WALTON WHEN
     IT GRANTED THE GOVERNMENT'S MOTION FOR AN UPWARD
     DEPARTURE AND VARIANCE. ..................................................13

   A.   Standard of Review ...............................................................13

   B.   The Upward Departure Was Unwarranted.................................15

   C.   The Upward Variance Was Unwarranted ..................................17

II.  MR. DURBIN'S SENTENCE IS PROCEDURALLY
     UNREASONABLE BECAUSE THE LOWER COURT ERRED IN ITS
     CALCULATION OF THE DRUG QUANTITY ATTRIBUTABLE TO
     HIM...................................................................................19

   A.   Standard of Review ...............................................................19

   B.   Argument.............................................................................19

      i.    The testimony of Ms. Thompson was vague and unreliable ...................21

      ii.   There was insufficient evidence related to the $82,300.00 seized by
            law enforcement to increase the drug quantity in this case. ......................22

      iii.  The district court's calculation of the drug quantity attributable to
            Mr. Durbin was erroneous. ........................................................23

iv.    Mr. Durbin was prejudiced by the error....................................24

III.  THE DISTRICT COURT ERRED IN FAILING TO GIVE A BIAS
      AND HOSTILITY INSTRUCTION AS TO THE TESTIMONY OF
      JAMEKA THOMPSON ...........................................................25

   A.   Standard of Review .......................................................25

   B.   Argument.......................................................................25

CONCLUSION ....................................................................................28

STATEMENT REGARDING ORAL ARGUMENT ...............................28

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States*, 552 U.S. 38 (2007) ....................................................... 13, 14, 19

*United States v. Ashley*, 606 F.3d 135 (4th Cir. 2010) ..................................................27

*United States v. Bartko*, 728 F.3d 327 (4th Cir. 2013) ..................................................25

*United States v. Bell*, 667 F.3d 431 (4th Cir. 2011)................................................20, 23

*United States v. Carter*, 564 F.3d 325 (4th Cir. 2009) ..................................................14

*United States v. Evans*, 526 F.3d 155 (4th Cir. 2008) ..................................................19

*United States v. Hampton*, 441 F.3d 284 (4th Cir. 2006) ............................................14

*United States v. Kellam*, 568 F.3d 125 (4th Cir. 2009). ..............................................19

*United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995)......................................................26

*United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010)................................................14, 19

*United States v. Milam*, 443 F.3d 382 (4th Cir. 2006)..................................................19

*United States v. Passaro,* 577 F.3d 207 (4th Cir. 2009)...............................................26

*United States v. Rusher*, 966 F.2d 868 (4th Cir. 1992)................................................16

*United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993) ............................................24

*United States v. Washington*, 743 F.3d 938 (4th Cir. 2014)........................................14

## Statutes

18 § U.S.C. 3742 ...........................................................................................................1

18 U.S.C. § 3231 ...........................................................................................................1

18 U.S.C. § 3553(a) ............................................................................................... passim

21 U.S.C. § 841 ......................................................................................................1, 2, 3

21 U.S.C. § 846 ......................................................................................................1, 2, 3

28 U.S.C. § 1291 ...........................................................................................................2

## Other Authorities

32A C.J.S. Evidence 1628 (2015)..................................................................................20

75A Am.Jur.2d Trial 1152 (2015) ...................................................................20

Leonard B. Sand *et. al.,* MODERN FEDERAL JURY INSTRUCTIONS
  Instruction 7-2...........................................................................................26

**Guidelines Provisions**

U.S.S.G. § 2D1.1..........................................................................9, 20, 24

U.S.S.G. § 3C1.1...................................................................................9

U.S.S.G. § 6A1.3.................................................................................20

U.S.S.G.§ 3B1.1(a) ..............................................................................9

U.S.S.G.§ 4A1.3(a) .............................................................. 2, 8, 15, 16

# GLOSSARY OF ABBREVIATIONS

CHC  Criminal History Category

PSR   Presentence Investigation Report

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICITION

The district court possessed jurisdiction over this federal criminal case under 18 U.S.C. § 3231. Terrell Walton appeals from the final judgment entered in the United States District Court for the District of Maryland on September 22, 2022. JA 452. A timely notice of appeal was filed for Mr. Walton on September 30, 2022. JA 458. Che Durbin appeals from the final judgment entered in the United States District Court for the District of Maryland on December 18, 2022. JA 505. A timely notice of appeal was filed for Mr. Durbin on December 20, 2022. JA 511. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 § U.S.C. 3742.

## STATEMENT OF THE CASE

On October 27, 2020, a federal grand jury returned a five count Superseding Indictment. (JA 31) Terrell D. Walton, was named in Count One, Conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base, "crack" cocaine. (21 U.S.C. § 846 and 21 U.S.C. § 841 (b)(1)(B) & (b)(1)(C)). (JA 32). Che Durbin was named in Count One, Conspiracy to Distribute and possess with intent to distribute 5 kilograms or more of a mixture containing cocaine (21 U.S.C. § 846 and 21 U.S.C. § 841 (b)(1)(A)), as well as Counts Two and Three, Possession with Intent to Distribute 500 grams or more of cocaine (21 U.S.C. §841(b)(1)(B)). (JA 31–34). After a seven-day jury trial, Appellants Terrell

1

Darnell Walton and Che Durbin were found guilty of Count One, and Che Durbin was found guilty of Counts Two and Three. (JA 378–80). The district court sentenced Mr. Walton to 156 months on September 22, 2022 and entered its written judgment on September 23, 2022. JA 452. The district court sentenced Che Durbin to 240 months on December 19, 2022 and entered its written judgment on December 20, 2022. JA 505–506. Both Mr. Walton and Mr. Durbin entered timely notice of appeals JA 458, JA 511. This appeal follows.

## STATEMENT OF THE ISSUES

I.   Whether the district court imposed a substantively unreasonable sentence on Terrell Walton when it granted the Government's motion for an upward departure under U.S.S.G.§ 4A1.3(a) and a variance.

II.  Whether the lower court erred in calculating the drug quantity attributable to Mr. Durbin for sentencing purposes.

III. Whether the lower court erred in declining to give Mr. Durbin's proposed instruction on bias or hostility.

## STATEMENT OF THE FACTS

On October 27, 2020, a federal grand jury returned a five count Superseding Indictment. (JA 31) Terrell D. Walton, was named in Count One, Conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base, "crack" cocaine. (21 U.S.C. §846 and 21 U.S.C. § 841 (b)(1)(B) & (b)(1)(C)). (JA 32). Che Durbin was named in Count One, Conspiracy to Distribute and

2

possess with intent to distribute 5 kilograms or more of a mixture containing cocaine (21 U.S.C. §846 and 21 U.S.C. § 841 (b)(1)(A)), as well as Counts Two and Three, Possession with Intent to Distribute 500 grams or more of cocaine in (21 U.S.C. §841(b)(1)(B)). (JA 31–40).

The investigation of this case began in early 2019. A suspicious package was delivered to the home of Che Durbin's mother in Harford County, Maryland, and Jameka Thompson, a girlfriend of Mr. Durbin, then drove it to another apartment. (JA 38). Ms. Thompson was going to take the package to an apartment on Hillside Terrace (JA 70). A woman named Candace Owens lived in that apartment. (JA 122). However, Ms. Thompson was intercepted by police and she was charged with possession of one kilogram of cocaine. (JA 109). Ms. Thompson lost her job as a result of the arrest, but she was released back into the community. (JA 109).

Following the seizure of the kilogram of cocaine, investigators began looking at packages sent between Ms. Thompson, Mr. Durbin, and associates to a man named Jack Anderson and his associates in Arizona.  (JA 339). One package was intercepted in January 2020 between a limited liability company operated by Ms. Thompson and Jack Anderson. (JA 668). That package contained $82,300 in cash. (JA 340).

During this period of time between May 2019 and May 2020, wiretaps were placed on phones related to Mr. Durbin, Mr. Walton, and others in the area of

3

Harford County, Maryland. Phone calls and text messages indicated that small weights of a controlled substance were being moved. Ms. Thompson also took a number of trips out to Arizona. In May 2020, trackers were obtained and placed on several of Mr. Durbin's vehicles. (JA 177). On May 8, 2020, Ms. Thompson flew to Tucson, Arizona, and Mr. Durbin drove a suburban vehicle to Tucson, Arizona. (JA 135). Mr. Durbin left the vehicle in Arizona and flew back to Maryland early in the morning on May 9, 2020. (JA 138). Ms. Thompson met with Jack Anderson, where she obtained a small package of cocaine, that was later determined to be 246 grams, and began driving towards Maryland in the Suburban driven that was left in Arizona by Mr. Durbin. (JA 84, JA 188). After driving for several hours, she reversed course and returned to Arizona, delivered the Suburban to Jack Anderson, rented a vehicle, and once again began driving towards Maryland. (JA 138–147). In a vehicle stop in Maryland, Ms. Thompson was found to be in possession of a package containing 246 grams of cocaine and 997 grams of cocaine. (JA 188).

The only cooperating witness at trial was Mr. Durbin's former girlfriend and co-defendant, Jameka Thompson. (JA 48, JA 53). Ms. Thompson was recently divorced and the mother of 4 children when she met Mr. Durbin. (JA 48–49). Ms. Thompson had a master's degree and was working at Aberdeen Proving Ground for the Department of the Army. (JA 101–102). Ms. Thompson entered into a relationship with Mr. Durbin following her divorce. (JA 62). Ms. Thompson

4

opened a limited liability company with Mr. Durbin to pursue trucking and realty opportunities. (JA 89). She was in contact with his mother. (JA 64). While she understood he had another partner, he would regularly say things about wanting to marry her. (JA 54). She testified that Mr. Durbin paid all of her bills. (JA 89) .

After Ms. Thompson was arrested in May 2020, she was released from prison, but violated her terms of release by contacting Mr. Durbin. (JA 56). While she was incarcerated with Mr. Durbin at a state facility, she continued to maintain contact with Mr. Durbin. (JA 56). She testified to having self-diagnosed herself with having "an obsessive mental health issue which makes [me] dependent on Mr. Durbin." (JA 59). While in federal pretrial custody, Ms. Thompson researched how the two of them could be married and shared that information with Mr. Durbin in hopes that he would fill out the necessary paperwork. (JA 54). Mr. Durbin remained with his prior partner, who he has been with since 2009. (JA 232).

Ms. Thompson testified that during her trips to Arizona, she would obtain cocaine from Jack Anderson and drive it back to Maryland. She took "maybe eight" trips to Arizona to bring back "maybe" 40 kilograms of cocaine to Maryland. (JA 75). While she testified to moving kilograms, she never weighed the cocaine she believed she was moving and never testified how much she moved on any given trip. (JA 124). She did not testify to being involved in the transfer of money related to the drugs.

At the close of the Government's case, defense counsel requested an instruction on bias and hostility, specifically as it related to Ms. Thompson's bias and hostility towards Mr. Durbin. (JA 213). The district court concluded that "it's not like she was angry," and that there was no evidence of bias or anger against Mr. Durbin. (JA 216).

Mr. Durbin testified at trial in his defense. Following his last release from prison, he began selling vehicles under someone else's dealer license in what he believed was a law-abiding career. (JA 234). He believed he was purchasing cars that were legal to sell because the titles to the vehicles looked legitimate. (JA 235). He admitted that even after he learned that the titles to the vehicles were not in fact legitimate, he continued to sell the vehicles. (JA 236). Because of the illegal nature of this scheme, Mr. Durbin conducted all of his transactions with cash (JA 258). Mr. Durbin was stopped by police in Indiana during 2019, where multiple car titles were found in his possession. (JA177). Mr. Durbin, on multiple occasions, sold vehicles to Jack Anderson in Arizona. (JA 82, JA 258).

Following Mr. Durbin's testimony, the district court reconsidered the request for a bias and hostility instruction. (JA 277). Following argument from the Government that Ms. Thompson never explicitly testified that she was angry with Mr. Durbin, the district court once again rejected the request for instruction. (JA 277–280).

In closing argument, counsel for Mr. Durbin urged the jury to consider Ms. Thompson's motives in testifying – pointing out the benefits she would receive in terms of a reduced sentence and the stakes she had because of her children. Counsel pointed out how frequently Ms. Thompson lied and exaggerated repeatedly. (JA 355–377). Counsel did not make any arguments related to the romantic relationship between Mr. Durbin and Ms. Thompson, nor to her failed attempt to marry him. (JA 355–377).

At the conclusion of trial, a jury found Mr. Walton guilty of Count One and Mr. Durbin guilty of Counts One, Two, and Three. (JA 378–380). As to Count One, the jury made a specific finding that the amount of cocaine reasonably foreseeable to Mr. Durbin was "500 grams or more, but less than 5 kilograms." (JA 378). The jury made a specific finding that the amount of cocaine reasonably foreseeable to Mr. Walton was 100 grams or more, and the amount of crack cocaine reasonably foreseeable to him was 28 grams or more. (JA 379).

Mr. Walton proceeded to sentencing first. ████████████████████

███████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████

██████████████████████████████

███████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

███████████████████ During sentencing, Mr. Walton

disputed some of the alleged misconduct incidents while detained, asserting that

they were exaggerated, mischaracterized, or based upon hearsay. (JA 403, JA 416-

423).

Ultimately, the district court granted the CHC departure, raising Mr.

Walton's CHC by two points, thereby placing him in CHC VI and adjusting the

guideline range to 100-125 months. (JA 423-424). In addition to this departure, the

court approved the Government's request for an unwarranted upward variance,

resulting in a sentence of 156 months. (Pursuant to U.S.S.G. § 4A1.3(a)) (JA 445 -

448).

Following a draft PSR for Mr. Durbin, the Government filed a sentencing

memorandum on August 10, 2022 encouraging the Court to find that Mr. Durbin

was responsible for 5 kilograms or more of cocaine, as opposed to the 500 grams,

8

but less than 5 kilograms found by the jury. (JA 597). ████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

     Appellant, Durbin argued that the base offense level should be a level 24, pursuant to U.S.S.G. § 2D1.1(5), honoring the verdict of the jury, which rejected an amount of 5 kilograms or more. (JA 389). Mr. Durbin also contested the enhancements for leadership and obstruction of justice. (JA 399). Durbin also requested that the district court consider the struggles he endured while detained pretrial, which included a delayed surgery for the tear of his Achilles Tendon, an

infection as the result of the surgery, and his being stabbed in the eye by another inmate while awaiting sentencing, resulting in blindness in one eye. (JA 390–391).

Ultimately, the district court found that, as a result of seizures, transportation records, co-conspirator testimony, and money seized, it believed Mr. Durbin was responsible for at least 5 kilograms of cocaine and imposed a base offense level of 30. (JA 473). The district court also increased his offense level for leadership and obstruction of justice, resulting in a guidelines range of 325 – 405 months. (JA 484). Ultimately, the district court sentenced Mr. Durbin to a below-guidelines sentence of 240 months. (JA 500). The district court referenced his very poor physical health, especially noting that he was stabbed in the eye by his co-defendant while incarcerated and other health issues he had to endure while incarcerated[1]. (JA 498–500). The court noted that before it heard argument as to Mr. Durbin's sentence, it was inclined to sentence Mr. Durbin high into the guideline range, but found that his conditions of confinement warranted a lesser sentence. (JA 500). The court sentenced Mr. Durbin to a period of 240 months. (JA 505–510).

---

[1] At the time of sentencing, the Government changed their sentencing recommendation from 325 months to 240 months because of the personal circumstances of Mr. Durbin, specifically as related to his health issues while incarcerated pre-trial. JA 488.

10

## SUMMARY OF THE ARGUMENT

1.     Mr. Walton was unreasonably sentenced to a term of incarceration of 156 months and five years of supervised release. The sentence was a result of an unwarranted upward departure from Mr. Walton's given criminal history and an additional unwarranted upward variance. Both departures were unjustified under the totality of the circumstances, and the sentencing court failed to provide sufficient reasoning to warrant such departures.

An upward departure may be warranted if reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of their criminal history or the likelihood of future crimes. However, the departure must be supported by specific reasons and not simply based on a general recitation of the defendant's criminal history. In Mr. Walton's case, the Government's argument for an upward departure relied on acquitted charges and unreliable hearsay incident reports received while Mr. Walton was incarcerated. As such, the District Court failed to provide concrete reasons for the departure, and its reliance on hearsay-based incident reports further weakened the justification. Furthermore, the departure was not supported by evidence significantly diverging from the standard guidelines. The PSR accurately calculated Mr. Walton's criminal history category, accounting for relevant offenses and necessary adjustments.

11

Absent any extraordinary factors justifying departure, such action was unwarranted.

The upward variance was equally unwarranted and constitutes an abuse of discretion by the district court. During sentencing, Mr. Walton's presented his personal history, family life, education, and upbringing, highlighting his unique characteristics compared to his codefendants. Section 3553(a)(6) requires the Court to consider a defendant's culpability in relation to acts committed by codefendants and the sentences imposed for those acts. In Mr. Walton's case, he played a minor role compared to his co-defendants, making the district court's significant variance from their sentences unjustified.

2.    The lower court erred in attributing 5 kilograms or more of cocaine to Mr. Durbin for purposes of calculating the sentencing guidelines, despite the jury's explicit ruling that 5 kilograms or more of cocaine was not foreseeable to Mr. Durbin. In order to arrive at this result, the lower court had to rely on the testimony of Jameka Thompson. Yet, on the issue of amounts of drugs that were being moved, Ms. Thompson was extremely vague and lacked any detail which could have lent credence to her gross estimations regarding quantity. The court further relied on the seizure of $83,200.00 by the postal service as a basis for its decision. There was no evidence that this money was tied to any amount of cocaine, or even

12

the purchase of cocaine. Had the guidelines range been properly calculated, and based on the finding of the jury, Mr. Durbin would have received a lesser sentence.

3.     At trial, the Government and the defense admitted evidence which would permit the jury to infer that Ms. Thompson's testimony was motivated by bias and hostility. Mr. Durbin and Ms. Thompson were romantically involved prior to their arrest, and Ms. Thompson was admittedly unhealthily obsessed with Mr. Durbin. Ms. Thompson made attempts to marry Mr. Durbin, who remained in a relationship with another romantic partner. The defense requested an instruction permitting the jury to consider bias and hostility in evaluating credibility of witnesses, which the lower court declined to give. The instruction was a correct statement of the law, was not adequately covered elsewhere in the court's instructions, and substantially impaired the defense's ability to impugne Ms. Thompson's credibility on this point. The lower court erred.

## ARGUMENT

## I.     THE DISTRICT COURT IMPOSED A SUBSTANTIVELY UNREASONABLE SENTENCE AS TO TERRELL WALTON WHEN IT GRANTED THE GOVERNMENT'S MOTION FOR AN UPWARD DEPARTURE AND VARIANCE.

### A. <u>Standard of Review</u>

"This Court reviews a district court's sentence for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). This Court "must first ensure that the district court committed no significant procedural error, such as failing to calculate

13

(or improperly calculating) the Guidelines range . . . failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. When the district court imposes a departure or variance sentence, this Court will "consider whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States v. Washington*, 743 F.3d 938, 944 (4th Cir. 2014) (quotation omitted). "The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *United States v. Hampton*, 441 F.3d 284, 288 (4th Cir. 2006) (quotation omitted); *see Gall v. United States*, 552 U.S. at 50 ("a major departure should be supported by a more significant justification than a minor one").

"Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an individualized assessment based on the particular facts of the case before it." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (quotation omitted). Where, as here, the defendant argues for a lower sentence by reference to the § 3553(a) factors, the error is preserved, and this Court will reverse unless the Government shows that the error was harmless. *See United States v. Lynn*, 592 F.3d 572, 579-81 (4th Cir. 2010).

14

## B. <u>The Upward Departure Was Unwarranted</u>

§ 4Al.3(a) of the United States Sentencing Guidelines (USSG) provides that a departure based on inadequacy of criminal history is warranted as follows:

(1)   Standard for Upward Departure. -- If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

(2)   Types of information Forming the Basis for Upward Departure. -- The information described in subsection (a)(l) may include information concerning the following:

(A)   Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal convictions).

(B)   Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.

(C)   Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.

(D)   Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

15

(E)   Prior similar adult criminal conduct not resulting in a criminal conviction.

(3) Prohibition. -- A prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement.

When determining whether an upward departure is warranted, the court should "consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record." *See* U.S.S.G. § 4A1.3(a)(1)."The requirement of providing specific reasons for departing is not satisfied by a general recitation that the defendant's criminal history category or offense level underrepresents, in the sentencing court's opinion, the defendant's criminal record or the seriousness of the charged offense." *United States v. Rusher*, 966 F.2d 868, 883 (4th Cir. 1992) (quotation omitted). The district court abused its discretion in this case by relying on acquitted charges and other unreliable reports from Mr. Walton's incarceration.

During sentencing, the Government argued for an upward departure based on acquitted charges against Mr. Walton as evidence of his dangerousness. Without providing any additional information, the government relied on previously acquitted crimes to say that this is Mr. Walton's third felony drug offense. The district court failed to consider these acquittals before granting the Government's request for an upward departure.

16

Additionally, the district court erred in relying on incident reports that consisted of nothing but hearsay. During sentencing proceedings, the district court correctly proposed that everything outside of an alleged assault on Mr. Durbin, could be "take[n] out of the equation" (JA 421). However, it appears that the court contradicted itself when later referencing these hearsay infractions as part of the basis for granting the upward departure. (JA 423, JA 445-446)

When reviewing Mr. Walton's sentence, the imposition of an upward departure for inadequacy of criminal history was not sufficiently supported by evidence that demonstrates a significant departure from the standard guidelines. Mr. Walton's criminal history category was properly calculated in the PSR, taking into account noted past offenses and any relevant adjustments based on their nature and severity. There were no extraordinary factors that warranted a departure from the standard sentencing range.

## C. **The Upward Variance Was Unwarranted**

The 31-month upward variance was unwarranted, and the district court abused its discretion when it imposed this variance on Mr. Walton.  At the sentencing hearing Mr. Walton acknowledged his criminal history as set forth in the PSR. He emphasized his personal history and characteristics including his family life, education, upbringing, in addition to his role in the offense compared

to the codefendants. (JA 442-444, *see also Defendant's Sentencing Memorandum /*
*Letter*. (JA 381– 84)

Under § 3553(a)(6), the Court must consider Defendant's culpability in
relation to acts his co-defendants committed and sentences imposed for those acts.
Four out of the five co-defendants, who were equally or more culpable as Mr.
Walton, received shorter sentences. (JA 443)

The co-defendants were sentenced as follows:

(1)    Jack Anderson -- 126 months. (plea agreement) (JA 17)

(2)    Jameka C. Thompson -- 33 months. (plea agreement) (JA 21)

(3)    Michael R. Wells  -- 71 months. (plea agreement) (JA 15)

(4)    Gerrick D. Jackson -- 72 months. (plea agreement) (JA 21)

(5)    Che J. Durbin -- 240 months. (Went to trial with Mr. Walton)

Compared to his co-defendants, except for Mr. Durbin, Mr. Walton was a
minor player and there is no justification for such a long sentence (156 months)
that is so disproportionate to his involvement in this case.

When evaluating Mr. Walton's involvement in this offense, his history, and
comparing his conduct to the conduct of his co-defendants, the facts of this case
did not warrant an upward variance of 31 months.

## II. MR. DURBIN'S SENTENCE IS PROCEDURALLY UNREASONABLE BECAUSE THE LOWER COURT ERRED IN ITS CALCULATION OF THE DRUG QUANTITY ATTRIBUTABLE TO HIM

### A. Standard of Review

This Court reviews a sentence for abuse of discretion. *Gall,* 552 U.S. at 51. First, the Court determines whether the lower court committed a significant procedural error. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Before making such a determination, the Court must examine whether the district court committed a significant procedural error, such as improper calculation of the Guidelines range, insufficient consideration of the 18 U.S.C. § 3553(a) factors and the parties sentencing arguments, and inadequate explanation of the sentence imposed. *See United States v. Lynn*, 592 F.3d 572, 575 (4th Cir. 2010). When determining whether a procedural error resulted from the lower court's calculation of drug quantity, this Court reviews the calculation for clear error. *United States v. Kellam*, 568 F.3d 125, 147 (4th Cir. 2009).

### B. Argument

At sentencing, the Government bears the burden of proving the quantity of drugs to be attributed to the defendant by a preponderance of the evidence. *United States v. Milam*, 443 F.3d 382, 386 (4th Cir. 2006). Proof by a preponderance requires more than that the Government simply offer some evidence. Instead, "[a] preponderance is such proof as leads the trier of fact to find that it is more probable

19

than not, or more likely than not, that a contested fact exists." 32A C.J.S. Evidence 1628 (2015); *see also* 75A Am.Jur.2d Trial 1152 (2015) ("A proper definition [of 'preponderance of the evidence'] suggests a comparison of the convincing power of evidence on one side with that upon the other, and a determination of which outweighs the other as to the probabilities.").

When, as here, the total drug quantity is not proved by direct evidence, the Government must offer evidence from which the court can "approximate the quantity." U.S.S.G. § 2D1.1, cmt. n.5. The Sentencing Guidelines do not provide a particular method for making this determination, but are clear regarding certain obligations of the court when making this critical calculation: The court must carefully assess the credibility of the witnesses. The court must ensure that the evidence on which it bases its conclusion is reliable. U.S.S.G. § 6A1.3. Finally, whatever drug quantity the court arrives at, "it must place on the record an 'individualized assessment' based on the particular facts of the case before it. The explanation must be sufficient to allow for 'meaningful appellate review,' such that the appellate court need 'not guess at the district court's rationale.'" *United States v. Bell*, 667 F.3d 431, 442 (4th Cir. 2011) (internal citations omitted.).

In this case, the Government offered only testimony of Jameka Thompson and a package of $82,300.00 in cash seized by the United States Postal Services, that none testified was for the purchase of drugs to offer what, if any, cocaine

beyond the approximately 2.25 kilograms that was seized from Jameka Thompson, was attributable to Mr. Durbin. The testimony of Ms. Thompson was biased, vague, and inconsistent. The Government simply failed to prove the drug quantity by a preponderance of the evidence.

### i.  The testimony of Ms. Thompson was vague and unreliable

The district court based its finding in large part on the testimony of Ms. Thompson, the ex-girlfriend of Mr. Durbin. Ms. Thompson's testimony, especially as related to the weight of drugs that was involved, was vague. She testified that she took maybe eight trips to Arizona and that she maybe transported forty kilograms total. Of those maybe eight trips, she testified that during two of the trips, she did not pick up drugs.  However, she frequently did not know how much she was picking up, and she never once weighed the drugs she was picking up. She never testified to knowing even how much money was being exchanged. As such, her opinion as to the amount of drugs she was transporting is pure speculation. If her estimation was anywhere near correct, she would have been picking up 7 kilograms or more on every trip. There is nothing in the evidence that indicates she was picking up even a kilogram each time she traveled to Arizona. When she was returning from Arizona to Maryland in May 2020, she initially only traveled back with a quarter of a kilogram of cocaine.  She did not testify that it was a light load or that she typically transported much more cocaine.

Further, Ms. Thompson is an unreliable witness. She testified that when she was arrested in May 2019, she lied to authorities. (JA 121). When she was arrested in May 2020, she lied to authorities. (JA 125). When she was disciplined for an inappropriate act while housed in federal pretrial detention, she lied to prison authorities about her involvement. (JA 119). Only once she was facing federal charges, a mandatory minimum sentence of 10 years, and had failed to marry Mr. Durbin that Ms. Thompson began to implicate Mr. Durbin in order to avoid a decade behind bars. Under oath, she testified that she was delivering drugs to an apartment that only she and Mr. Durbin had access to, and then later contradicted her own testimony by testifying that a woman named Candance Owens lived there. (JA 122). In reaching a decision that the amount of drugs reasonably foreseeable to Mr. Durbin was less than 5 kilograms, the jury indicated that it found her to be an unreliable witness. (JA 378).

### ii. There was insufficient evidence related to the $82,300.00 seized by law enforcement to increase the drug quantity in this case.

The district court erred in relying on the $82,300.00 as evidence of any quantity of cocaine. First, the Government contended that $82,300.00 placed in the mail on January 22, 2020 was enough money to purchase roughly 4 kilograms of cocaine. However, no evidence was put on at trial to suggest what the going rate for cocaine at the time of the seizure was. Further, there was no testimony that this

22

money was for the sale of cocaine. Ms. Thompson testified that on the two

occasions where she flew to Arizona and did not pick up controlled substances, she

flew back to Maryland instead of driving. (JA 123–124).  While agents presented

flight records that she boarded a plane on January 23, 2020 and flew to Arizona,

there were no flight records that indicated that she flew back to Maryland. JA 160.

And Ms. Thompson did not testify specifically that she flew back from Arizona in

January 2020.

Further, sufficient evidence was provided at trial indicating that Mr. Durbin

was involved in the sale of illegal vehicles. Ms. Thompson testified that he was

selling these vehicles to Jack Anderson. Agents testified that they believed it was

occurring. Mr. Durbin testified that the money being sent to Jack Anderson was

being sent back to him after Mr. Durbin failed to obtain vehicles to send to Mr.

Anderson.

The evidence linking the $82,300.00 to the purchase of cocaine is

insufficient to even meet the preponderance of the evidence standard.

### iii.  The district court's calculation of the drug quantity attributable to Mr. Durbin was erroneous.

Despite the shortcomings of this evidence in both quantity and quality, the

lower court attributed more than 5 kilograms to Mr. Durbin. (JA 473). It was

incumbent on the court to assess the reliability of the evidence. *Bell*, 667 F.3d at

441. The only reliable evidence related to the amount of cocaine in this case was

the amount that was seized – approximately 2.25 kilograms. Given the vague and

unreliable nature of the testimony of Ms. Thompson, and the lack of evidence tying

the $82,300.00 seized by the United States Postal Service to the purchase of

narcotics and not other illegal activity. Preponderance of the evidence simply does

not mean any evidence at all, without regard to its reliability and the credibility of

those delivering it. As the First Circuit has noted,

> Courts must sedulously enforce the quantum-of-proof rule, for, under
> the guidelines, drug quantity has a dramatic leveraging effect. Thus,
> relatively small quantitative differences may produce markedly
> different periods of immurement. This reality informs the
> preponderance standard, requiring that the district courts must base
> their findings on "reliable information" and, where uncertainty reigns,
> must 'err on the side of caution.'

*United States v. Sepulveda*, 15 F.3d 1161, 1198 (1st Cir. 1993). As such, the district

court erred by relying on unreliable evidence to increase Mr. Durbin's guidelines.

### iv.  *Mr. Durbin was prejudiced by the error*.

The United States Sentencing Guidelines provide for a base offense level of

30 for the distribution of 5-15 kilograms of cocaine, a base offense level of 26 for

2-3.5 kilograms of cocaine, and a base offense level of 24 for 500 grams -2

kilograms of cocaine. U.S.S.G. § 2D1.1 (c). With an addition of two levels for

obstruction of justice, four levels for a leadership enhancement, and a criminal

history category of IV, the difference in Mr. Durbin's sentence exposure was 324–

405 months versus 210–262 months or 168–210 months. In imposing a below-

guidelines sentence, the court made reference to Mr. Durbin's pre-trial detention struggles, namely his being stabbed in the eye by his co-defendant and a delayed surgery that resulted in severe infection. The district court noted that before it heard argument as to Mr. Durbin's sentence, it was inclined to sentence Mr. Durbin high into the guideline range, but found that his conditions of confinement warranted a lesser sentence. (JA 500). While the Court's imposition of a sentence of 240 months was below the guidelines range, it is clear that the guidelines range was the starting point of the district court's sentence. In giving a statement of reasons for the sentence, ███████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████ As such, had his guideline range been accurately calculated, Mr. Durbin would have received a lesser sentence.

### III. THE DISTRICT COURT ERRED IN FAILING TO GIVE A BIAS AND HOSTILITY INSTRUCTION AS TO THE TESTIMONY OF JAMEKA THOMPSON

#### A. **Standard of Review**

This Court reviews a lower court's refusal to give a proposed instruction for abuse of discretion. *United States v. Bartko*, 728 F.3d 327, 343 (4th Cir. 2013).

#### B. **Argument**

At both the conclusion of the Government's evidence and the conclusion of the defense case, the lower court held an on the record conference to discuss

25

proposed jury instructions with the parties. The joint proposed jury instruction

number twenty-seven was as follows:

> This is an instruction I give in all criminal cases. In connection with
> your evaluation of the credibility of the witnesses, you should
> specifically consider evidence of resentment or anger which some
> government witnesses may have towards a defendant. Likewise, you
> should consider evidence of resentment or anger which some
> witnesses may have towards the government.

> In any trial, evidence that a witness is biased, prejudiced or hostile
> toward a defendant requires the jury to view that witness's testimony
> with caution, to weigh it with care, and subject it to close and
> searching scrutiny.

(JA 45). The district court declined to issue this instruction.

A district court's refusal to prove a requested instruction constitutes

reversible error where the instruction "(1) was correct; (2) was not substantially

covered by the court's charge to the jury; and (3) dealt with some point in the trial

so important, that failure to give the requested instruction seriously impaired the

defendant's ability to conduct his defense." *United States v. Passaro,* 577 F.3d

207, 221 (4th Cir. 2009) (quoting *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir.

1995)).

First, there was no indication by the court or the Government that this

instruction was not a proper statement of the law. Indeed, it is based on Leonard B.

Sand *et. al.,* MODERN FEDERAL JURY INSTRUCTIONS Instruction 7-2.

Second, the issue was not substantially covered elsewhere in the instructions. While the jury was instructed to use caution in evaluating the credibility of cooperating witnesses on the ground that they may have had incentive to say what the Government wanted to hear, (JA 298), this instruction did not cover the issue of personal ill will. It did not cover the issue of resentment, anger, and hostility Ms. Thompson may have towards Mr. Durbin as a result of their failed relationship.

Finally, the refusal to the instruction demonstrably affected the jury's ability to consider this important additional factor implicating Thompson's credibility. As indicated throughout the brief, this was a case that relied heavily upon the testimony of cooperating witness Jameka Thompson. Ms. Thompson was a girlfriend of Mr. Durbin's but by no means was she his primary partner. She testified that he had another girlfriend that she knew about, but the other girlfriend did not know about her. While she testified that she was not promised marriage by him, she also testified that he paid all of her bills and she had an "obsessive mental health issue" that made her dependent on Mr. Durbin. (JA 59, JA 89). During her incarceration in state custody, she continuously contacted Mr. Durbin despite court orders forbidding it. (JA 56). While they were incarcerated at the same facility, she looked up information about how the two of them could get married and provided him with instructions to make that happen. (JA 54). The two were never married.

Throughout the entirety of this case, Mr. Durbin has maintained a relationship with his primary partner. (JA 493). It is well within the province of the jury to conclude that Ms. Thompson bore bias and hostility toward Mr. Durbin for failing to be as committed to their relationship as she was. *See e.g., United States v. Ashley*, 606 F.3d 135, 140 (4th Cir. 2010)(drawing reasonable inferences is "precisely what juries are empaneled to do."). Further, following two denials of the request for the jury instruction, Appellant's trial counsel did not even raise the issue of bias or hostility in closing. Had the instruction not been denied twice, the arguments likely would have been raised in closing, and so any error is not harmless. A new trial is required.

## CONCLUSION

For all the foregoing reasons, Appellants, Terrell D. Walton and Che Durbin, respectfully request that this Honorable Court reverse the district court's judgments, and/or vacate its terms, or alternatively, remand their cases for rehearing with instructions to correct the errors made, and/or provide any other relief this Court deems appropriate.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34, Appellants, Terrell Walton and Che Durbin, respectfully request this honorable court grant oral argument on the issues presented in this appeal.

Respectfully Submitted,

/s/ Allen H. Orenberg
Allen H. Orenberg
The Orenberg Law Firm, PC 12505
Park Potomac Avenue, 6th Floor
Potomac, Maryland  20854
(301) 984-8005
aorenberg@orenberglaw.com

*Counsel for Appellant*
*Terrell D. Walton*

/s/ Gary E. Proctor
Gary E. Proctor
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, MD 21202
(410) 444-1500
garyeproctor@gmail.com

*Counsel for Appellant*
*Che Durbin*

Dated:  August 11, 2023

## **CERTIFICATE OF SERVICE**

I certify that, on August 11, 2023, I electronically filed the foregoing Opening Brief of Appellants with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify, that on August 11, 2023, I served the Sealed version of the foregoing brief, via USPS, on counsel listed below:

Jason D. Medinger
OFFICE OF THE
U. S. ATTORNEY
36 South Charles Street
4th Floor
Baltimore, MD 21201

/s/ Allen H. Orenberg
Allen H. Orenberg